Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Sharon O. Johnson presiding. Case number 22-0107, People v. Brian Hewlett. Good afternoon and welcome. I'm Justice Sharon O. Johnson and I'm joined by Justices Michael Hyman and Carl Walker. You'll each be given 20 minutes in which to make your arguments during which the justices may interject with questions. I'd like for the Appellate's counsel to first state his appearance for the record and then let me know how much time you'd like to reserve for rebuttal. Good afternoon, Your Honors. It's Attorney Sam Adam Jr. and I'd ask for 12 and 8 if that's okay. Okay, make it difficult for me. Oh no, I'll take what Your Honor gives me. I'll take what Your Honor gives me. Okay, and Appellate's counsel, please state your appearance for the record. Assistant States Attorney Gerard Richard Burks Jr. on behalf of the people. Okay, very well. Attorney Adam, you may begin. Thank you. May it please the court. Before I begin, I ask the court for a little latitude just for a quick personal statement as bearing on the case if Your Honors will allow. Very short, which is I would like to point out that as I'm sure you know, my father was a criminal defense lawyer and he practiced in Illinois and his first case was before the in November of 1963. And so I am honored that you would allow me 60 years later to come up here before you before this very same court. And so I thank you for that. But with that, it's a bittersweet day for us. Because it's bitter for me, because I have known many people throughout the legal community growing up in it, as I just stated about my father. And I have known Attorney Irv Fetterman since I was 16 years old. I have known Judge Claps since I was 17 years old and clerked for my father. The reason I bring that up today is I take no pleasure in the arguments that I have to make today about Judge Claps and about Attorney Fetterman. I know them and respect them. And personally, I'm fond of them. But this case, Your Honors, is a travesty as we see it. As the court knows, I was intimately involved with this. I know this case inside and out. And Attorney Fetterman, in this case, did not reach the standards that he was supposed to. Let me ask you a question. Sure. Yes, Your Honor. You make a lot of arguments and the state responds to them. Give us your best two arguments. I know there's more. There's a lot of arguments. Some are better than others. But what would you say your top two? You can even go three. But these are the ones that if we can't get to these, you know, we can't even get down to the others. What are the best ones? First and foremost, there was no way this case was a reasonable doubt case, Your Honor. I'm going to break it to you as simple as that. This case comes down to Strickland versus Washington. And was there ever a defense here of reasonable doubt? And from the very beginning, there was never a question of who did this case. This was never a whodunit. This was why was it done. When you look at all of the evidence that came forward, which was the defendant was seen in the clothes that he was arrested in and was said to be the shooter. He's running down a hill caught on tape in the very clothes that was called into the police. When they get him, he's in a red Jeep that was called from a red Jeep. Next to that red Jeep is a gun with a bullets inside of it matched the bullets, the shell casings on the hill. Though the shell casings on the hill come back to being fired by the defendant. The defendant brother is arrested in the very red Jeep driving that was called in. There was never a question of who did this case. And for Attorney Fetterman to go with that defense, there is no reasonable lawyer that would. However, this case from the very beginning was a self-defense case. Within minutes, Michaela McNabb ran to a police officer at the gym and said the victim and his friends, multiple of them had a gun. The defendant told his lawyer, the gun next to me was my gun. I brought it. I shot. Attorney Fetterman knew from the very beginning that the defendant claimed self-defense. And for anyone to say that that's a reason that any reasonable defense lawyer would go forward on a reasonable doubt has one of two things, either has been incompetent his entire career or has never tried a criminal case in his life. Because you know, that's not true here. So what, what, I mean, the response of the state, I'm not trying to put words in their mouth, but they're going to say strategy, strategy, strategy. Of course. Yes, sir. And, and this was not, if you look at what happened and what Mr. Fetterman said, it comes down to his misunderstanding of the state wants to tell your honors that Mr. Fetterman did not have a misunderstanding that he saw this as not having self-defense there, but he's clear in what he says to the court when he testifies before it's a little long. So I'll just read it to you quick. We know that attorney Fetterman believes that you cannot present self-defense unless a gun is pointed at you. This is on page 24 of his trial testimony. This is what he understands the law to be. I think he, the defendant believed they had weapons. And I believe, yes, that's probably true based on Michaela seeing the gun and the way they were acting and things that they say. One of the things that struck me and appeared to resonate with him was that he was hearing, we can't let you leave here. That's the threat. They told them together, or maybe Mike might, obviously he heard that threat, but it was my feeling that alone, without seeing a weapon pointed at him or not actually seeing the weapon that time wouldn't make it imminent. And that is not the law of self-defense. It's what's in the mind of the defendant at the time. And at this time, the defendant testified to facts. We know he told Mr. Fetterman ahead of time. Now, there is no way that this was trial strategy. There's no way to go that this wasn't the defendant who did the shooting. The only defense here that could possibly come out was self-defense. And was he prejudiced? Because that's what we have to get to with Strickland. He was never given the opportunity, A, to testify, which I don't understand why Judge Claps didn't admonish him on a case where you have an affirmative defense listed and you don't ask the defendant- The state argues that the judge wasn't required to. You want to respond to that? The state is technically correct. There has not yet been a requirement passed down. However, I would pose to this court, and I know this court is forward thinking as any court in the country. I think the law has to be that when you have an affirmative defense, where typically the sole evidence comes from a defendant, that judges in the trial level should be forced to ask whether they want to testify. I'm not saying in all cases, but in a case where it is an affirmative defense such as alibi and especially self-defense, there should be an obligation underneath the Fifth and Sixth Amendments to the Constitution and the clauses in the Illinois Constitution that demand that a judge ask that when a self-defense has been filed. But in this case, didn't counsel at some point have doubt as to the identification witnesses, that Corey was no longer available, and that Collins wasn't sure that he could identify Hewlett? Yes, ma'am. And this is why we say this falls below the standard for a criminal defense lawyer under these circumstances. Everyone knew coming in that both of them, Dylan and the other Collins, gave handwritten statements as well as grand jury statements. Identification is one of those things that comes in if it's a handwritten statement and given under oath in a grand jury under 115-10.1. There was no way that those statements weren't coming in. There was no way that no matter what that the judge was not going to hear the identification under 115-10.1, and that shows that he fell below the standard. He argued that over and over and over again that you shouldn't allow it in, but 115-10.1 allowed it, and that's the state of the law. We ask that your honors declare that that violates the Confrontation Clause, but we know where that argument is most and went with the defense of it wasn't him. Everybody was him. And what you just said, the defense was it wasn't him, and so during the trial, he did not raise before the judge the self-defense at all, even though he had raised it way before, but he never went through with it. He never said to the judge, I'm doing the self-defense, right? Yes, sir. As far as we can tell, yes, sir. Yeah, so the fact the judge didn't admonish him, it's understandable in this circumstantiation, and you're saying maybe he should have, but considering what the lawyer actually did at trial, and that's really what we have to look at is was he competent, what he did at trial, is this past Strickland test, and was he prejudiced, and of course, that's what you're saying, and isn't it true that because he did not pursue it, which means that that's why the judge didn't give him the admonition, that makes your case. Well, no, no, and this is why I respectfully disagree with you. We have to look at everything. Remember, as Justice Ringfoot said on a thousand times, we have to look at the totality of the circumstance. What the defendant did do was the defense counsel filed two separate answers to discovery, one on February 28th and one on June 6th of the same year, and in those answers to discovery, he filed a self-defense. Now, he was incompetent for two reasons because of that. One, because he didn't go through with it, but two, and this goes against everything that he says he was waiting to do, waiting to see what the evidence was, he never listed the self-defense witnesses on either, so if he's listed self-defense, the judge should have admonished him. He did it twice, and if he was going to hold out and wait as he claimed before the judge, he would have listed the self-defense witnesses, which he never did, but Kayla McNabb was never on there, and so you get to see how this drew out, and the truth of the matter was, you asked me plainly, what happened in this case was when Mr. Fetterman filed that lynch motion, this is our and he didn't know what to do after that point. He didn't understand that the pictures themselves under lynch could come in to show who was the aggressor. Lynch has two prongs. One, what the defendant knew to show who did these things, and two is, under lynch, are you the aggressor, and they had pictures of the alleged victim with guns. That could have come in to show who was the aggressor, but Mr. Fetterman didn't know how to do it, and from that moment on, everything fell apart on self-defense, and that, under Strickland, is exactly what we've been saying. What about, in your brief, you talk quite a bit about how Fetterman was looking at McNabb's counsel as a kind of a leader and following behind him, sort of like in lockstep. Will you explain that? Well, if you look at some of the- I'm going to ask you to be brief counsel because your time has expired, but you will have your rebuttal. You can answer the question, but just be brief, please. I was the counsel that he was following. If you look at what he says at the time of trial, he makes the argument that McNabb and Hewlett are in the same position, therefore, we have the same defense, but Hewlett was the shooter. McNabb was never claimed to be the shooter, and then, once he loses, he changes that at the post-trial and says, well, I knew that they weren't the same. I never paid attention to that, yet he'd already previously said, no, they're in the same position. He was trying to make a self- I mean, a reasonable doubt argument in the trial court that simply didn't fly. Okay. Thank you very much. I just got a really quick question for Attorney Adams. Attorney Adams, the state is arguing that, incorrectly so, that in a bench trial, the trial judge could still find self-defense, even though it's not argued. Did you want to respond to that? Yes. Under these circumstances, of course, he's right. The trial judge could do anything. Number one, he was not asked, and he should have been, but two is, under these circumstances, they didn't have much evidence. As we laid out in our motion, that's one of the Mr. Fetterman should have gone forward with an expert to show that those were gunshots. He left it to a police officer to determine whether or not those showed gunshots, and the police officer, only evidence in is, no, they were not. And so, there was not much evidence outside of the defendant testifying and Michaela not testifying that would have shown self-defense. And that's why the defendant is prejudiced. That very thing the state says is why they're prejudiced. Okay. Thank you very much. Attorney Birch. May it please the court. Gerard Richard Birch Jr. on behalf of the people of the state of Illinois. The trial court heard defendant's evidence in all of his supporting reasonable doubt evidence, excuse me, self-defense evidence, and found that it would not have changed the outcome of the case. Yet, defendant asked this court to lend no deference to the trial court's findings. Defendant asked this court to lend no deference to trial counsel's professional judgments. And in doing so, defendant insists that self-defense was still a strong and viable theory, but the totality of the people's evidence suggests otherwise. In light of this evidence, counsel's strategic decision that self-defense was not the most viable path to acquittal. What is the standard review that we use? Isn't it a mixed standard review? The standard review here is clearly manifest error. Why? It's because the trial court, the trier of fact, previously adjudicated the merits of defendant's alternative theory, as well as the merits of the testimony that he would have presented in pursuit of a self-defense theory. That's on the facts, but on the law, it's de novo, right? No, no, no, your honor. We submit to this court that it's manifest error, basically because... On the facts, that is, the manifest error goes to the facts. In your brief on page 27, you don't even cite any case with regard to the standard, even though you talk about the standard. So, isn't the standard with regard to the facts, it's the judge's discretion, unless it's against the manifest weight of the You're saying that's not true? Is that right? It's our position that everything is manifest error here, basically because... Even the law, we don't look at the law de novo, we look at a manifest error. Is that what you're saying? Well, okay, we're not saying that you look at the law manifest error. We were looking at the entirety of the court's, the trial judge's assessment of defendants' allegations of ineffective assistance. Well, I'm talking about facts. On facts, you and I, we're not disagreeing. I'm just saying whatever that means is a question of law, and that is a de novo review. If you don't know, say you don't know, or you say you agree, or you disagree. Your honor, it's our position, even if the court takes a de novo standard of review, this evidence and the evidence and the law that was presented not only at trial, but at the motion for a new trial hearing, there's nothing in the record that suggests that this court should overlook the trial court's findings as it relates to the law, as well as the facts. I think where the confusion may be, Mr. Burchess, you're looking at it that we're just simply reviewing the motion for a new trial. And the main purpose of the motion for a new trial is to preserve any other errors that may have been made during trial. I think the real issue here is an ineffective assistance of counsel issue. So that's really what we're reviewing is whether or not there was ineffective assistance of counsel, but you seem to be focused on the motion for a new trial that we should be in. That would be whether or not the trial court abuses discretion or whether or not it's against the manifesto evidence and all those things. Do you agree that what we're really reviewing is whether or not there's ineffective assistance of counsel? Yes, to a certain extent. Yes, yes, your honor. The real standard here is the reasonableness of trial counsel's actions. And our argument is that everything that trial counsel argued at trial was reasonable based on the evidence. And had counsel presented, relied solely on the self-defense theory, the people most certainly would have highlighted the fact that the victim was shot twice in the back. The victim's hands tested negative. He never had the opportunity to do that. You're going to prejudice. But let's start with the brief is full of it. This man was guilty. I mean, Mr. Adams just told us all the things, the litany of things and there are other things he could have added with regard to this man had residue on his hands. I mean, the only thing he didn't have was a fingerprint on the gun. Other than that, everything matched. Right. So the question is that with that kind of situation to go into a trial and say, it's not me, is taking your client from the courtroom to prison. And he's saying that it would it's ineffective sense of counsel, considering that the evidence is there for a self-defense. If you call the daughter, his brother's daughter, the niece and other evidence, you say there's evidence against it. Of course, we don't have to say who who may win. We just have to decide whether it's prejudicial enough to have a new trial. Do you agree or disagree? Well, our position is that it's not prejudicial. Why? Because the trier of fact told us that it wasn't prejudicial. They even had defendant presented a self-defense theory. It would not have changed the outcome of the case. But that's what you're saying. We don't have a right to review that. That's not a court. Can't review that. No, we're not saying that the appellate court doesn't have the right to review the trial court's finding. But on this record, on the cold record, we're taking the totality of the circumstances, the top top, excuse me, the totality of the evidence, as well as the totality of all the testimony that was presented at the motion for a new trial hearing. And on this record, I don't it is the people's position that this that record does not present any type of basis for this court to overturn or find that counsel was ineffective or counsel was unreasonable, especially being the fact that should lend deference to trial professional judgments and everything that counsel. I'm sorry. No, I didn't say anything. I'll ask a question. So had they proceeded on the self-defense as an affirmative defense, could a reasonable jury have found him not guilty based on the the self-defense? Um, being that it was a bitch trial here, or are you? Well, I'm sorry. I stand corrected. Yes. Could a reasonable not? No. Could the court have found him not guilty based on the self-defense? No, not not based. It is our position that not based on the totality of the evidence and counsels, I think it's particularly that we want to make the point that it was the deficiencies and defendants proposed testimony that led counsel to believe that self-defense was one of the reasons that led counsel to believe that self-defense was not the most viable defense. And that was what evidence just lay it out for me. What evidence do you believe would have, you know, made self-defense not a viable defense for this defendant? One, the victim was shot twice in the back. Two, the victim's hands tested negative for GSR. Three, the only cartridge casings recovered from the second from defendant's gun. Wait a minute. You're talking about the victim. I'm sorry, the defendant's gun. I'm the fact is all of these things you're talking about. You have to look at the totality of the other circumstances as you both have said. And when you look at the totality, there was a group of up to 10 individuals, one of whom we know from the niece's testimony had a gun. And we know that the defendant said he shot two or three times. Well, going back and he was trying to not shoot anybody. He was trying to up in the air or something. He was trying not to hurt anybody. I mean, he said something to that effect, but apparently somebody was shot. So just because somebody shot in the back, just because of all the, you didn't have any residue on the hand, the victim, that doesn't mean that he wasn't self-defense and he was scared for his life because of what happened there, which we only know about from what this hearing produced. Well, based on defendant's proposed testimony, he never told council that he saw anyone in the opposing group with the gun. That's right. And that goes to what Mr. Adams said. Mr. Adams said that, that he didn't say that, but that doesn't, that's only part of the issue because he thought you had to see a gun. That's his mistake of law is he said, you have to have a gun to be in imminent danger, but that was wrong. You don't have to have a gun, see a gun. So, you know, I don't know if you're disagreeing or not on the facts, you're agreeing on the facts. So it's a question of law as to how those facts are applied, isn't it? Yes, your honor. But it's our position that council's strategic decision to argue reasonable doubt was reasonable based on what he would have to have overcome had he asserted a self-defense theory. Right. It's overcome under the reasonable doubt. We had gunshot residue found on both hands, evidence that he had been in possession of a murder weapon, evidence that he was leaving in the getaway car, that the red car, the red Jeep that had been identified, there was a weapon found right outside the vehicle, which I think when one officer walked up, they pointed it out to him and then subsequently was given to a sergeant. But the lineup identification, the handwritten statement identifying him, the grand jury testimony, there was just so much there that that's why I think what Mr. Adams has been arguing is that this was just not a reasonable doubt case when you had all of this evidence. And that's why he's arguing that counsel is ineffective. So I want to ask you to respond to that. Help us, because we're trying to decide this case correctly. So in light of counsel's arguments, we just want to reiterate again that the reasonableness of counsel's decision to argue reasonable doubt was based on, one, defendant's DNA was not found on the gun. Had it been found on the gun, there would have been no question. It would have been undisputable that he maybe had the murder weapon. However, the fact that GSR was found on the gun was not conclusive evidence that he fired a weapon. And counsel emphasized that fact that a person standing between three to six feet away from a fired weapon could test positive for GSR. Also, it was reasonable for counsel to- Do you think that's a strong argument? You've been to trials and you know you're a prosecutor. I mean, have you saw that case come in your door? Your Honor, strong is not the word I would use. I would use the word reasonable for staying pursuant to Strickland. It was a reasonable trial strategy for trial counsel to decide, hey, okay, I can call into question these GSR results, which he actually did. Also, it was also reasonable to argue reasonable doubt because the surveillance video did not identify anyone as the shooter. It was no help to the defense or the prosecution's case. And four, counsel was aware of Denzel's credibility issues, and it was certainly objectively reasonable for counsel to attack the witness, the credibility of the only witness that could have possibly identified defendant as the shooter at trial, being that Corey Atwater was killed before trial. These facts are the facts that link credence to counsel's testimony that there was a reasonable chance that the state would not be able to prove beyond a reasonable doubt. I would like to turn, if I could, I would like to turn to the second prong of Strickland, which should this court find that counsel's actions were unreasonable, the record rebuts any claim of prejudice where the trial court heard all the evidence defendant would have presented in support of his self-defense claim and found that it would not have changed the outcome of the case. Specifically, the trial court heard what defendant Michael McKayla and defendant's witness, Mr. Garrett, would have testified to and still found defendant guilty of first-degree murder. Once again, the people urged this court to lend deference to that finding. Thank you very much. Rebuttal, Attorney Adam. Thank you. And I'll try to get it to the two as Justice Hyman has asked me to. Going right to the last point that he made, you have to understand exactly what the state just said is why this case should be reversed. The reason it should be reversed is, had self-defense been issued, as counsel just said, there were major problems with the witnesses in the state's case. And what is the law on self-defense in the state of Illinois? That once it is presented, the state must disprove it beyond a reasonable doubt. We seem to have forgotten. The state said there were problems with both, with reasonable doubt as well as the self-defense. It was kind of six in one hand, half a dozen in the other. And I say that's absolutely not true, and this is why. Because had self-defense been presented, had McKayla been presented, had the defendant testified, what evidence did the state have to disprove it beyond a reasonable doubt? There was no eyewitness that came in and could testify to whether or not the victim had a gun. They were never asked, and they weren't cooperating. Did they have a video showing of disproving what the defendant and McKayla said? No, they didn't have any of that. So once self-defense, because all you need is a scintilla of evidence, was presented, how could the state disprove it beyond a reasonable doubt? And then we move into prejudice, because even if the judge said, no, I don't think the defendant's disproved what was in the mind of the defendant at the time he shot, which was, I believe it was reasonable. And that's second degree. They said the fact that he was shot in the back. But as this honor just said, this is exactly why he was ineffective. With a second degree, it doesn't show why he shot. With him being shot in the back, it doesn't show why he was shot. The state had nothing to disprove that he went back because he was scared. And once you do that, it's second degree. And the prejudice here has got 82, this man got 86 years. On a case with all the evidence that we have, with second degree, he would have gotten 20 years at 50%. And if that's not prejudice, I have no idea what prejudice is. 86 years the judge gave him. And this lawyer never presented anything on second degree. And lastly, what his honor just said about falling back, why wasn't a reckless homicide issue? Why wasn't it involuntary that he fired recklessly? He gave him no chances. The only thing he did is walk him to the prison. The only thing Mr. Fetterman didn't have were the keys. And so there was no reason not to present self-defense because reasonable doubt was out the door. Lastly, I would like to say one other thing, which was, and again, I say that I'm very fond of Judge Claps, but the state keeps referring to these findings that the judge made. This is the only finding that he gave after all of the testimony and all of the facts came in. It was a two sentence finding that after all the arguments, the case law submitted in reaching my decision. And in my mind, especially as applies to testimony given by the defendant and supported his motion for new trial as to what he would have testified had his lawyer called him as a witness in trial would have not changed the outcome. We don't know what he based it on. He never gave us any factual findings. We don't know what law he used. We say the state is wrong, that the law here is not whether or not he would have found him Is there a probability, a reasonable probability that the outcome would have been different? And that's what this court has to decide. With all of these things with self-defense, was there a reasonable probability that he would have been found guilty of second degree? The state argues that the trial court has already made that decision. And I say that's letting the tail wag the dog. The whole purpose of the appellate court system in the United States is for the courts to review the law in relation to what the fact finding was done in the trial court. Without that, there's no reason for us to be arguing this. We just leave it to the trial court to make a decision as to did they do it right? That's the tail wagging the dog. And so with that, it wasn't the question. It wasn't the question over did they do it right? But they're just simply saying that the trial judge has already made that finding that based upon all the new information he's gotten, that he would have still decided it's the case the same way. That's the argument. So I don't think it's not ridiculous. It wasn't a ridiculous argument. You're right. I'm sorry. I get going sometimes, your honor. I'm sorry. But with what he is saying here, we do not know what standard his honor used. Did he use the reasonable probability? Or did he say proof beyond a reasonable doubt? What standard did his honor use? We do not know by looking at the findings that he made. And so with that, we ask you use the de novo review, look at this and say, look, nobody wants to see these cases get reversed, unless there really is ineffective assistance accounts. And here, there was clearly a lack of anything going toward reasonable doubt. There was plenty of evidence of self defense and second degree. And this is one of those cases, your honor, that needs to be reversed to give this defendant an opportunity to present who knows what's going to happen at trial. But this was not a fair trial. And we ask that you rent our appeal. Any additional questions from the panel? Okay, thank you very much for your zealous arguments on behalf of your respective clients. You have given us quite a bit to chew on. And we will accordingly. Thank you so much. Thank you. Happy Veterans Day to those.